The fifth case today is 20-6043 and 20-6108 Winco Foods v. Crossland Construction Company. Counsel for Appellant, would you make your appearance and proceed, please? Thank you, Your Honor. May it please the Court, Michael McClintock with McAfee and Taft on behalf of Appellant Winco Foods LLC. And I would like to start, I'll reserve three minutes. I'd like to start by starting with the standard of review. The parties have submitted differing standards of review. And prior, when the briefs were filed, there was not a definitive statement from Oklahoma regarding the appropriate standard of review. And what you had was the cases cited by us, which is a list of a string site. If you do the research, we cited one case, but it's Oklahoma Court of Appeals that the entitlement to attorney's fees is de novo reviewed, and then the rest of it is abuse of discretion. You had Crossland citing the ARCLA case, which is a Tenth Circuit case, setting forth that the standard of review, it draws a distinction between determining which party is prevailing versus the meaning of prevailing party. And that standard of view was the definition of what a prevailing party is, is as a matter of law, but determining whether a party is prevailing is abuse of discretion. And that was the ARCLA case, which was a Tenth Circuit case applying Oklahoma law. But the distinction that was drawn was based on Alaska law. The court in ARCLA to rely on this distinction cited a 1972 Alaska case, Owens versus C.R. Lewis, 497 P. Second, 312. We submit that the dispute has been resolved, but it was resolved by the Oklahoma Supreme Court post-briefing. In November of last year, after the briefs had been submitted in this case, the Oklahoma Supreme Court, which is the first statement that the Supreme Court has made on the standard of review, was handed down in Comanche Nation of Oklahoma X-Rail Comanche Tourism Center v. Coffey, 480 P. Third, 271 Oklahoma Supreme Court, November of 2020. And it states that whether a party is entitled to attorney's fees, specifically under 936, is a question of law that is reviewed de novo. So we believe that the issue is, it's not whether or not 936 or 939 is applicable. It's, you know, who makes the discretionary call of who won. And now there's this opinion saying that 936 applies. I'm not sure that that's going to respond to Mr. McGraney's argument that the determination of who won is an impractical matter, you know, seems logically to be a discretionary call for the district judge to make in the first instance. Well, I certainly appreciate that this is a legal matter that could be decided either way. We believe this recent decision addresses the distinction you're making and says that it is all de novo. Now, unfortunately, the case just came out. There hasn't been briefing on it. I appreciate this puts both Mr. McGraney and myself at a disadvantage. And obviously, it would have been better. Have you submitted a 28-J letter on that, Mr. McLaughlin? We have not, Your Honor. Please, just for the record, do that so that we have that in the fine, okay? I would be happy. I'm not saying you can't talk about it now. I'm just saying just do that after this proceeding. I will do that, Your Honor. And I think that regardless of the standard of review, if you go back and look at the cases of both that we rely on heavy, obviously, the Midwest case and the Tomahawk case, those are both cases that are addressing the same issue that we're addressing here. And you have the courts reversing the courts of appeals. We submit it's under a de novo standard, but we submit under either a de novo standard or abuse of a discretion standard. The trial court erred in this case. But in both of those, in Midwest and in Tomahawk, the contractor obtained fees, not under 936, but the fee award. And so in both of those cases, the Oklahoma Supreme Court was saying, okay, owner, you can prevail on a breach of contract claim. So you may get fees, say, under 936, some statute that would be applicable. Contractor, you won on a separate claim, a distinct claim to foreclose on your lien. And there happens to be a separate fee-triggering statute for lien foreclosure claims in Oklahoma. So they were different claims. Here, I think what Judge Heaton is saying, there's, you know, both sides are arguing for a breach of contract over the same contract. And as a practical matter, there can only be one party. And I'm going to say, yeah, the party that withheld the $850,000 didn't implete it, didn't pay it into a trust account, kept it in his pocket, and then they had to turn over a check for $228,000, Judge Heaton says, well, that's a little different than Midwest and Lifestyle. It's the same claim. It's not a, it's a breach of contract claim. I appreciate the distinction you're drawing. And it is true that, in fact, in our case, there is not, there was not a lien claim asserted as a counterclaim. However, we do not believe the nature of the counterclaim changes the nature of our direct claim. And it's not that there was only one claim. There were two very separate claims, a claim and a counterclaim. And we don't think the nature of the counterclaim, it could have been a non-fee-bearing claim. It they asserted a claim for payment for breach of contract, like we provided the services, but you didn't pay. We asserted a claim for you breached the contract by not providing the services. We think the important factor is that there are separate claims. This is not a situation of an offset where we have some basis unrelated to the rendition of services to say, we do not have to pay you. This is a claim by Winco against Crossland for breach of contract for providing defective services. And we believe that claim standing alone is entitled to be a fee claim. And it does not matter that the counterclaim was asserted. I guess they could have asserted lien rights. I mean, they had them. They did the work. There would have been a lien as a matter of construction law. They could have asserted it. They didn't. And the fact that they did or didn't and just chose to assert a claim directly for payment only rather than worrying about priority because lien rights are really about priority. If it comes down to, you know, who's getting paid first, if we got to sell some property. And so, you know, the fact that there's an underlying debt there, whether it's secured by a lien or not, and whether you go to foreclosure or not, the underlying issue is contractual in all these cases. What concerns me, Mr. McClintock, is that when I look at the jury instructions, when I look at the verdict form, both of those speak of one breach of contract claim. And unless you show me something in those documents to the contrary, in fact, in one place, I think it expressly says to the jury that what we're dealing with is one breach of contract claim. And so that is what was underlying Judge Heath's determination, that it is opposite sides of the same coin. That same coin was presented to the jury when it made its determination. As far as I could tell from the record, you didn't object to those instructions or to the verdict form. And so why are you situated now to say that what's at issue here are two different claims and that those claims, that it doesn't matter? I mean, in fact, that's the way it was wasn't it? What am I missing? I think what your honor is missing is that the jury was instructed on two separate claims. They were instructed specifically on a breach of contract claim by Winco against Crossland, and the elements were laid out. To find that Winco prevailed on its claim, you must find a contract. There was a breach and damages. There was then a separate instruction given on Crossland's counterclaim for breach of contract that was similar in that it discusses the elements, but it was a distinct claim. And if you look at the general measure of damages instruction, the court expressly discusses the fact that they're both parties are claiming breach of contract against each other, and that would on the same. I'm sorry, Mr. Quintock, volume one one nine two. Finally, because both parties are claiming breaches for by the other party to the same contract. Now, and so the question is the same contract in which there would be a question of what would be the result of breaches as it relates to the same contract. That language suggests to me that we're not talking about, that we are talking about opposite sides of the same coin. At least that's the way it was presented to the jury, was it not? Well, I don't think the distinction of opposites, we don't agree with the characterization of opposite sides of the same coin when you're talking about truly separate claims. Well, the language of the contract, right? It is the same contract. That is too. However, the claims are very distinct. One is for payment. Pretty straightforward. There was a contract. We did work. You owe us money. That was the end of it. And in fact, that was essentially conceded. And that was in the same jury instruction that you're quoting, where it talks about it is undisputed. It's the same contract, but it's two separate claims. On the one hand, one for payment. Very straightforward, where we didn't really contest and in fact, didn't contest and admitted in our interrogatory answers in our initial disclosures that it was stipulated that we owed the $850,000. And the only reason we withheld it was our breach of contract claim, which was not the same. It was, and the evidence was completely different, is it was defective work. And we had to fire our general contractor, take over, and not only do $850,000 worth of work, but on top of that, do $1.2 million worth of work in damages. And so, um, while it is one contract and that is undisputed and, and Judge Holmes, you're absolutely correct on that. We do not believe that makes it a characterization of two sides of the same coin. I think that argument would apply in Midwest and Tomahawk. I don't, it's the same contract in those claims where you have, again, the fact that they chose to sue on lien rights in one case, in another case, the lien rights were found to be invalid. Well, you know, the point you're making that it was true in Midwest and in Tomahawk, I think cuts against you because the contract, there was only one party that was able to recoup attorney fees for a breach of contract claim. And that was the owner. As you pointed out in your reply brief, there was in Tomahawk an additional contract claim that the contractor had also brought as well as for lien foreclosure. The problem with your argument, I think, is in Tomahawk, the contractor only won attorney fees on his lien foreclosure claim. The only fee award on a contract claim was for the owner in both Midwest and in Tomahawk. So I, I think I was with your argument until then, because it seems to me that those cases cut against your argument. Well, I, your honor, I don't think, again, if it, if the counter claim that is asserted against us is the deciding factor in the case and it had to be a lien claim, then we, the other side is correct. If that, if that's, we have to concede that point. If that is a, if the counter claim asserted against us is a distinction that matters and if they'd have asserted lien rights or unjust enrichment or something other than a counter claim for breach of contract, we concede. However, we do not believe that's a distinction with the difference because, and I'm about out of time, I do want to touch on the issue of the applicability of 9, 936, which is, is this a fee claim to even begin with? And we, again, we asked the court, we would ask you to look at the Midwest and Tomahawk cases and start there and then finish with the Burroughs case. In Midwest and Tomahawk, it wasn't even an issue whether it was a fees case and you had basically the same situation. And the reason it wasn't an issue is because of what is said in the Burroughs case. In the Burroughs case, it says very expressly that is the underlying nature of the suit itself that determines the applicability. And the question is whether the damages arise directly from rendition of the services and labor. And we submit that's the case here. All the damages, including what they characterize are lost profits, directly result from the defective services that were rendered. They didn't build the building right. And all the damages flowed directly from that, including the fact that the store wasn't open. And you could have a situation where the store wasn't open because the damages, but not because of defective performance, some other reason that wasn't directly tied to the performance. But I see that I'm out of time. Thank you, Mr. McClintock. Council, please proceed. Thank you, Judge Holmes. Robert McGreeny on behalf of Appel Lee Crossland Construction Company. I would like to jump into the fray with respect to the standard of review. To be clear, I don't think it would matter to the outcome of this appeal because under any standard of judicial review, Judge Heaton's order should be affirmed. But I also think the discretion standard very clearly applies to all issues raised on appeal. We agree it applies to the questions of apportionment and the question of the amount, the quantum, the reasonableness of the attorney fee award. The dispute between the parties is simply what standard of review applies to a district court's determination of who prevailed. That issue has been addressed on several occasions by the Tenth Circuit, starting back in 1986 with Circuit Judge Baldock in Supra v. Ricketts, looking at the difference between de novo review and abusive discretion. That has kind of morphed over the years to what is actually a very simple rule governing judicial review in these circumstances. The Arcla case, and I'll reference a more recent case from the district court's determination that a party did or did not prevail, is reviewed for abuse of discretion. And I gathered from the argument that was made by Mr. McClintock that the notion that this was an issue of Oklahoma law, is that your perception? That, your honor, is a little would be determined by Oklahoma law, but it is a little bit confusing, quite frankly, and kind of kind of a mix. But in my view of the world, I think the standard of review is a procedural question. It has been decided by the Tenth Circuit repeatedly. I am not, unfortunately, familiar with this new Oklahoma Supreme Court case referenced by Mr. McClintock. I will become familiar with it. We all will. But I do believe, your honor, the law is very clear in this circuit. The standard of review is abuse of discretion when it comes to determining who won the trial court. Judge Heaton, in this case, is in the best position, having monitored a case and then presiding over trial from inception to closure to determine who won. And so it's an abuse of discretion standard, we believe. We believe. Let me jump into the next issue of revealing party status. As noted, these were competing claims under the same contract. Competing claims for only money damages under a single contract. Judge Heaton's determination in that regard is rock solid. Rock solid under any standard of review. The law in Oklahoma, now we're going to pivot to the substantive law on prevailing party status, is very clear that in this situation, there can only be one prevailing party. Where there are competing claims for money damages under Quapaw v. Vornell, there can only be one prevailing party. The same is true in the circuit. The ARCLA case very clearly says, under Section 936, there can only be one prevailing party. This is a very, very critical distinction because when we roll into Midwest v. Lashley and the Tomahawk Resources case, the quintessential distinguishing factor is that those cases involve multiple fee-bearing claims. Both of those cases and the underlying case, which I'll stress here in just a second, the Welling case, which ultimately produced both Midwest and Tomahawk, these cases all involve situations where multiple separate fee-bearing claims are submitted to the Tomahawk and then go on to Welling. In Midwest, the trier of fact was an arbitrator. The arbitrator very clearly entered an award in favor of the owner on one fee-bearing claim and also entered an award in favor of the contractor on a separate fee-bearing claim, and that's what compelled the conclusion that there were two prevailing parties. Tomahawk, the exact same thing. Not an arbitrator, but a jury, and the opinion in Tomahawk is very clear that the jury returned a verdict in favor of the owner on one fee-bearing claim and then in favor of the contractor on a separate fee-bearing claim. Again, that's what compels the conclusion that in those rare instances, there are more than one prevailing party. Now, both of those decisions, I want to stress, rely upon this Welling case, and I'm not going to talk in detail about the Welling case, but I do want to point this out. Winco's exact argument and the Welling case itself has been discussed, distinguished, rejected by both the decision of underwriters at Lloyd's of London versus North American Bandlines. Let me get my glasses out because I can't see close without them. It's 829 P. Second 978 in Oklahoma Supreme Court decision 1992. In that case, the insurance company defendant successfully reduced the amount of it was a substantial reduction, actually, from a jury verdict of $70,000 to only $7,500. And the insurance company applied for its attorney's fees and made this exact same argument that reducing the other party's damages should confer upon us prevailing party status. What if to obtain an award of compensatory damages on its breach of contract claim, and for the contractor to have a separate line, and if there was a figure that was greater than zero on both lines, why wouldn't that fall within the concept that underlay both Midwest and Mr. McClintock's point that there are separate claims. Now, there's a separate, you know, there's frequent, there's, and he's would say, there's, it's not a question of offset, it's a question of, you know, it was just the form of the verdict that was that was, you know, the cause of this conundrum. Well, Judge, I've actually thought about that question quite a bit in this particular case, because there were not separate fee-bearing claims that were either pled or instructed upon or submitted to the jury. If the only thing the verdict form, if the only change we made in the verdict form was one line on breach of contract for Winco, one line on breach of contract for Crossland, I don't think that would trigger the analysis in Midwest for Tomahawk, because those aren't separate fee-bearing claims. But perhaps more importantly for this appeal, there are no issues concerning the jury instructions and verdict form that were preserved on appeal. That's gone. The only issue on appeal is Judge Heaton's post-judgment orders on the motions for attorney's fees and costs. And so if arguably there was some way to have salvaged this during the jury instructions and the verdict form that was submitted, that's not preserved for appeal. Now, I don't think this appeal should be decided on that basis, because Judge Heaton got it right in the way. But we also know from the record that on the one line, the plaintiff, Winco, was the victor. The jury came back and awarded a substantial amount to Winco. So I don't know that his argument would necessarily turn on the challenge to the jury instructions, because we know factually what happened. Well, I think it doesn't turn on it in the sense that it's all some money damages under the same contract. I mean, we know that there was some confusion on the part of the jury about how to properly net out these competing claims under the same contract. That's why they incorrectly filled out the form initially and then came back after a few minutes and correctly filled it out. But again, those issues, whether or not the form itself should have delineated between different damage claims or if they had been properly pled, separate legal theories, that issue of proper instruction to the jury and the use of a proper verdict form, those issues have not been preserved for appeal. Well, on that point, though, does it matter whether those documents, the jury instructions and the verdict form, the posture in which they put the case to the jury when it made its decision? In other words, is it significant that if you can argue, and I think it's a call bar argument, it may not be a convincing argument, but a call bar argument could be made that what those documents indicate is what Judge Heaton characterized as debate, which is essentially two sides of the same coin competing claims. Does it matter that that would be the posture in which this was brought to the jury if that's not an issue on appeal? In other words, there it is. That's it. You're stuck with it. And that's what the way the jury viewed the case. Does it matter? Well, if I'm following the question, I don't think it matters. Let me restate it. I guess all I'm getting at is, should we entirely disregard the jury instructions or the verdict form, or should we look to them for indicia as to how this dispute was presented to the jury for its resolution? I think the jury instructions and verdict form are extremely compelling and relevant to this appeal because all parties at this were exactly what it was, competing claims for money damages under a single contract, as Judge Heaton characterized the opposite sides of the same coin. That's clear throughout the pleadings. That's clear throughout the final pretrial order. That's clear not only in the jury instructions that were given, but also those proposed even by Winco. And that's clear in the verdict form. We all recognize going in how this was being instructed to the jury and what we were asking the jury to do. It's just kind of after the fact that this is morphed into, well, there were separate claims and this, this, that, and the other thing. And so on the one hand, I do believe the jury instructions and verdict form are relevant to this appeal. But to the extent Winco's arguments depend upon the jury being improperly instructed or a different verdict form should have been used. That's what I'm saying has not been preserved for appeal. But again, at the end of the day, Judge Heaton got it right. I mean, they were properly instructed. We all agreed on it. The proper verdict form was used. We all agreed on it. And so, so I think it's inconsequential in that sense, because the law in this situation is very clear. Let me touch on a couple of things and then I'll wrap up. I was referencing the underwriters of Lloyd's case in which an insurance company tried to say reducing damage is the same thing as winning. The Oklahoma Supreme Court very clearly says in this case at page 981, we are not faced here with the situation as in Welling versus American Briefing. That's that case, the case that Midwest and Tomahawk rely upon. We are not faced here with a situation where both sides were entitled to reasonable attorney's fees where each prevailed on a separate statute entitling them to attorney's fees. The court goes on to say the essence of the question involves whether a defense, though successful in limiting plaintiff's damages, but not resulting in a judgment for the defendant, entitles the defendant to prevailing party status. In that case, under Section 940 of Title 12, the Oklahoma Supreme Court says no. We answer that question in the negative. In the case of BP America decided by the Tenth Circuit in 2014, that's at 747 F 3rd 1253, the Tenth Circuit says the exact same thing. The exact same thing, distinguishing Welling and saying simply reducing another party's damages doesn't go to entitlement. That's just one of the factors that goes into quantum. It just goes to reasonableness. It's to considered by the trial court in the actual amount that's awarded. And so all of this, in our opinion, falls into that same category of sound discretion. Judge Heaton's orders are correct. I say that I'm out of time. They should be affirmed and Crossland should be awarded appeal related fees and costs as well. That's all I have, unless there are further questions. Thank you, Counsel. Mr. McClintock, I don't think you had any additional time. Is that correct? That is correct. He is out of time. Okay. Well, then, unless the panel members have any questions where the case will be submitted. Thank you.